IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE LEE,

      Plaintiff,               No. 2:09-cv-2666 MCE KJN P

   vs.

CORRECTIONAL SERGEANT
SWAN, et al.,               <u>ORDER AND</u>

      Defendants.      <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding without counsel and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' April 5, 2010 motion to dismiss filed on the grounds that plaintiff failed to exhaust administrative remedies.  After carefully reviewing the record, the undersigned recommends that defendants' motion be granted.

<u>Legal Standard</u>

        The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

1

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  <u>Porter</u>, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective."  <u>Id</u>. at 524; <u>Booth v. Churner</u>, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  <u>Booth</u>, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money."  <u>Id</u>. at 734.[1]

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available.  <u>Brown v. Valoff</u>, 422 F.3d 926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  <u>Brown</u>, 422 F.3d at 936-37.

As noted above, the PLRA requires proper exhaustion of administrative remedies.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."

---

[1] The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance.  <u>See Booth</u>, 532 U.S. at 737; <u>see also Porter</u>, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

2

1    Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to

2    properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an

3    untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

4            The State of California provides its prisoners the right to appeal administratively

5    "any departmental decision, action, condition or policy which they can demonstrate as having an

6    adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides them

7    the right to file appeals alleging misconduct by correctional officers and officials.  Id. at

8    § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

9    must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

10   on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

11   (4) third level appeal to the Director of the California Department of Corrections and

12   Rehabilitation ("CDCR").  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing

13   Cal.Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies

14   the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

15           Non-exhaustion under § 1997e(a) is an affirmative defense which should be

16   brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

17   Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court

18   may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

19   remedies.  Id. at 1119-20.

20   Analysis

21           Pursuant to the mailbox rule, plaintiff filed the original complaint in this action on

22   September 19, 2009.[2]  The complaint was actually file stamped on September 23, 2009.

23

24          [2] See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from
     the date prisoner delivers it to prison authorities); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th
25   Cir. 2009) (holding that "the Houston mailbox rule applies to § 1983 complaints filed by pro se
     prisoners").

26

1          This action is proceeding on the amended complaint filed November 12, 2009, as

2   to defendants Swan and Dizon.  Plaintiff alleges that on May 8, 2009, defendant Swan ordered

3   defendant Dizon to put hand cuffs on plaintiff.  When plaintiff extended his hands out in front of

4   him, defendant Dizon told plaintiff to put his hands behind his back.  Plaintiff allegedly told

5   defendant Dizon that he could not do that because he just had his chest cracked open.  Defendant

6   Dizon asked plaintiff if he had a chrono for front cuffing and plaintiff answered, "no."

7   Defendant Dizon then cuffed plaintiff from behind and took him to the sergeant's office.  While

8   being cuffed from behind, plaintiff allegedly experienced severe pain.

9          In the motion to dismiss, defendants argue that plaintiff failed to exhaust his

10   administrative remedies before filing this action.  Defendants state that plaintiff did not obtain a

11   Director's Level Decision until October 27, 2009.[3]  (Dkt. No. 25-4, pp. 21-22 of 42.)

12          In his opposition to the pending motion, plaintiff observes that the Director's

13   Level Decision states that "[o]n September 17, 2009, the examiner reviewed the confidential

14   report related to this appeal and determined that staff did not violate policy as alleged..."

15   Plaintiff argues that his administrative remedies were exhausted on September 17, 2009, rather

16   than on October 27, 2009, i.e. the date the Director's Level Decision was issued.

17          While the examiner may have reviewed the confidential report and come to a

18   decision on September 17, 2009, plaintiff's administrative remedies were not exhausted until the

19   Director's Level Decision was issued on October 27, 2009.  If the court were to accept plaintiff's

20   assertion, then courts would be tasked with reviewing Director's Level Decisions to determine if

21   an issue or issues were addressed prior to the filing of a decision and whether an inmate was

22

23

24          [3] Plaintiff's grievance was treated as a staff complaint.  On May 26, 2009, it was partially
granted at the second level of review by a memorandum issued by Warden Dickinson.  (Dkt. 25-
4, p. 37 of 42.)  The memorandum stated that a confidential inquiry had been conducted and that

25   the appeal was partially granted at the second level.  (Id.)  The memorandum also stated that
plaintiff could appeal to the Director's Level of Review and was required to do so in order to

26   exhaust administrative remedies.  (Id.)

1  informed of the decision.  It is clear from the law and the relevant regulations that plaintiff's

2  remedies were not exhausted prior to the date the Director's Level Decision was issued.

3          Because plaintiff did not exhaust his administrative remedies prior to filing this

4  action, defendants' motion to dismiss should be granted.  See McKinney v. Carey, 311 F.3d

5  1198, 1199 (9th Cir. 2002) (per curiam) (requiring inmates to exhaust administrative remedies

6  prior to filing suit in federal court).

7  Remaining Matters

8          On June 23, 2010, plaintiff filed an amended complaint containing the same

9  claims against defendants Swan and Dizon as are contained in the original complaint.  On August

10  12, 2010, plaintiff filed a motion requesting that he be allowed to "re-file" his complaint.

11  Plaintiff suggests that he should be allowed to proceed on the amended complaint, filed after he

12  exhausted administrative remedies.

13          Because this *action* was filed before plaintiff exhausted his administrative

14  remedies, it must be dismissed.  In order to proceed with his claims against defendant Swan and

15  Dizon, plaintiff must file a new and separate civil rights action.  For these reasons, plaintiff's

16  motion to "re-file" his complaint is denied.

17          On April 16, 2010, plaintiff filed a motion to correct mistakes in defendants'

18  motion to dismiss.  Plaintiff argues that at one point the motion mistakenly refers to him as Mr.

19  Cockrell.  Plaintiff also states that the motion also references the Fresno Division of the United

20  States District Court for the Eastern District of California.  These mistakes are immaterial and

21  did not impact the court's consideration of defendants' motion.  Accordingly, the motion to

22  correct mistakes is denied as unnecessary.

23          Accordingly, IT IS HEREBY ORDERED that:

24          1.  Plaintiff's motion to correct mistakes (Dkt. No. 28) is denied;

25          2.  Plaintiff's motion to be allowed to re-file his complaint (Dkt. No. 33) is

26  denied;

1          IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (Dkt. No.

2  25) be granted.

3          These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

5  one days after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

8  objections shall be filed and served within fourteen days after service of the objections.  The

9  parties are advised that failure to file objections within the specified time may waive the right to

10  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11  DATED:  September 1, 2010

14          _____

15          KENDALL J. NEWMAN
            UNITED STATES MAGISTRATE JUDGE

17  lee2666.mtd